**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| | ) | |
| ABDERRAHIM OUZDY, | ) | Case No. 26-20248 (JJT) |
| | ) | |
| Debtor. | ) | Re: ECF No. 10 |
| | ) | |

# MEMORANDUM OF DECISION ON THE UNITED STATES TRUSTEE'S MOTION TO DISMISS DEBTOR'S CHAPTER 7 CASE

## I. INTRODUCTION

Before the Court is the Motion to Dismiss ("Motion," ECF No. 10) filed by William K. Harrington, the United States Trustee for Region 2 (the "UST"). In the Motion, the UST moves for an Order dismissing the Chapter 7 case of Abderrahim Ouzdy (the "Debtor") for cause and his lack of eligibility to be a bankruptcy debtor. An evidentiary hearing was held on this matter on October 1, 2026. The parties also advanced stipulated facts (ECF Nos. 27, 36) which were admitted into the hearing record as additional evidence by the Court. For the reasons stated below, the Court grants the Motion without prejudice.

## II. BACKGROUND[1]

On March 19, 2026, the Debtor filed a Chapter 7 voluntary petition. *See* ECF No. 1. The Debtor asserts that his debts are primarily consumer debts. *See* ECF No. 7. The Debtor is a citizen of the United States who worked for The Box Office Company, LLC, headquartered out of Ridgefield, Connecticut, for a period of at least seven (7) years up until September 1, 2023. *See* ECF No. 27. Since September 1, 2023, the Debtor has been employed by The Box Office Company Africa, headquartered in Casablanca, Morocco. *Id*. The Box Office Company Africa is

---

[1] All background facts included herein were stipulated to by both Debtor's Counsel and the UST at ECF No. 27, filed on June 26, 2026, and amended at ECF No. 36 on August 31, 2026.

an affiliate of The Box Office Company, formed to qualify to do similar business in Morocco. *Id*. The Debtor currently lives and has lived in Casablanca, Morocco, with his family since September 1, 2023. *Id*.

On April 24, 2026, the UST filed a Motion to Dismiss the Case based on the Debtor's Ineligibility for Relief Under § 109(a), Improper Venue under 28 USC § 1408, and Bad Faith Filing. *See* ECF No. 10. The Debtor then filed an Amended Petition for Relief on April 24, 2026, correcting some of the factual inaccuracies[2] which garnered the attention of the UST. *See* ECF No. 11. In response, on April 30, 2026, the UST filed a supplement to the Motion to Dismiss under 11 U.S.C. §§ 707(b)(1), (2), and (3): Causes for Dismissal for Presumed Abuse, Abuse for Debtor's Bad Faith Filing, and Abuse Under the Totality of the Circumstances Standard. *See* ECF No. 16.

On May 14, 2026, the Debtor filed his Objection to the Motion to Dismiss. *See* ECF No. 17. The Objection asserted that the errors corrected in the Amended Petition were those of Debtor's Counsel, presumably caused by a miscommunication between Counsel and his staff. *Id*. The Objection also argued that the minor property rights of the Debtor held in Connecticut were sufficient to satisfy the standards of 11 U.S.C. § 109(a) and 28 U.S.C. § 1408, countering the UST's contentions regarding the Debtor's ineligibility to file bankruptcy. *Id*.

On May 19, 2026, the UST filed a Second Supplement to his Motion to Dismiss and responded to the Debtor's Objection. *See* ECF No. 18. The UST contended that the Debtor's argument regarding his minor property rights in Connecticut did not satisfy the standards of 11 U.S.C. § 109(a) and 28 U.S.C. § 1408. The UST specifically argued that the Debtor's Objection

---

[2] Upon filing the original Petition, the Debtor had incorrectly represented his present home address as being in Berlin, CT (it was a friend's address) when the Debtor was actually living in Casablanca, Morocco. *See* ECF No. 1. The Debtor subsequently filed an Amended Petition and changed his residential address to the Moroccan address where he currently resides. *See* ECF No. 11.

relies upon pre-BAPCPA[3] cases which allowed a bank account in the United States to support venue in the District of Connecticut, and that the enactment of BAPCPA impacted the continued validity of those cases.

On May 21, 2026, a hearing and preliminary argument were held on the Motion. There, the UST and Counsel for the Debtor appeared. The parties largely reiterated their arguments and the need for a short evidentiary hearing was underscored. The UST also raised an additional concern: that the Debtor would be unable to participate in an evidentiary hearing under oath because he could not be sworn in effectively while residing in Morocco. Accordingly, the UST posited that the Debtor may need to come to the United States for the hearing, or that alternate means of swearing in the Debtor might be necessary. The UST also flagged that similar restrictions would impact the Debtor's ability to participate in the meeting of creditors required under 11 U.S.C. § 341.

The Court ordered the parties to submit agreed-upon facts or proffers with the parties filing such a stipulation on June 26, 2026.[4] *See* ECF Nos. 27, 36. The UST filed a Third Supplement to his Motion to Dismiss on June 29, 2026, with the Debtor filing a response soon after on July 1, 2026. *See* ECF Nos. 29, 30, respectively. An additional hearing was held on July 2, 2026, where the parties were directed to meet, confer, and promptly submit a joint proposed scheduling and trial order to the Court. The Court then issued another scheduling order for a status conference on September 17, 2026,[5] to discuss the contours of the trial and any logistical issues. The evidentiary hearing soon followed on October 1, 2026, where Debtor's Counsel called his sole witness, the Debtor, and presented other undisputed exhibits to the Court. The Debtor appeared

[3] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (codified as amended in scattered sections of the Bankruptcy Code).
[4] The stipulated facts were amended soon after on August 31, 2026. *See* ECF No. 36.
[5] This status conference was actually moved up and held on September 8, 2026.

remotely via Zoom, as he was physically located in Morocco at the time, and was accordingly sworn in by the Courtroom Deputy.

## III. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a) and (b)(1) and the General Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. A motion to dismiss is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## IV. STANDARD OF REVIEW

For this Court to consider dismissing the Debtor's case, the Court must consider: "whether the debtor filed the petition in bad faith," (11 U.S.C. § 707(b)(3)(A)) and "under the Totality of the Circumstances" test, (11 U.S.C. § 707(b)(3)(B)). The movant must prove, by a preponderance of the evidence, that dismissal is warranted. *See In re Perelman*, 419 B.R. 168, 178 (Bankr. E.D.N.Y. 2009). The burden of going forward with sufficient evidence is reposed in the non-moving party once a prima facie case is established. *See In re Sperry*, 2023 WL 7311233 *5, (Bankr. D.Conn.2023). Here, the UST's arguments, derived from judicial notice of the bankruptcy docket filings of the Debtor, shifted that burden to the Debtor.

## V. DISCUSSION

### A. VENUE

The UST argues that dismissal is warranted because, even if the Debtor was eligible to file a bankruptcy petition for relief in the United States, the District of Connecticut is an improper

venue. Specifically, the UST asserts in his Motion that the Debtor cannot satisfy the applicable venue standard set forth in 28 U.S.C. § 1408(1),[6] which provides:

> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district…

Section 1408(1) provides four alternative bases for venue: domicile, residence, principal place of business, and the location of the debtor's principal assets in the United States. *In re Segno Communications*, Inc., 264 B.R. 501, 505 (Bankr. N.D.Ill. 2001); *In re Frame*, 120 B.R. 718, 722 (Bankr. S.D.N.Y. 1990). A debtor meeting any one of the four is sufficient for jurisdictional purposes. *In re Broady*, 247 B.R. 470, 472 (8th Cir. BAP 2000). Accordingly, having a mere bank account (even if minimal) in the United States has been found by one court as sufficient to satisfy the requirement of proper location of a principal asset in the United States to be an eligible bankruptcy debtor. *See In re Farmer,* 288 B.R. 31 (Bankr. N.D.N.Y. 2002).

Regarding the UST's contention that the Debtor is ineligible to file for bankruptcy in the District of Connecticut, the Debtor having a bank account in the United States[7] has been

---

[6] This provision specifically governs venue requirements for filing a bankruptcy case under Title 11 of the U.S. Code.

[7] The Debtor has a Bank of America account totaling $182.30 as of the day he filed his voluntary Chapter 7 petition. *See* ECF Nos. 1, 27. *De minimis* as the value of the account may be, and along with the Debtor's other contacts with the United States and with Connecticut, the Debtor has enough to meet the legal threshold imposed by 11 U.S.C. § 109(a) and 28 U.S.C. § 1408(1) for venue. *See In re Farmer*, 288 B.R. 31 (Bankr. N.D.N.Y. 2002) (holding that a Nassau, Bahamas resident filing bankruptcy in the Northern District of New York and having bank accounts with HSBC Bank in the amounts of $400 and $200 at the date of filing her petition had enough "property" in the United States for venue purposes); additionally, *see In re McTague*, where the debtor filed for Chapter 7 bankruptcy while residing in Canada, and at the time of filing had $194 in a bank account with Manufacturers and Traders Trust Company in Buffalo. 198 B.R. 428 (Bankr. W.D.N.Y. 1996). The court in *In re McTague* found the debtor eligible to file in the United States as "the [c]ourt [had] no discretion to consider whether it was the intent of Congress [in conveying § 109] to permit someone to obtain a bankruptcy discharge solely on the basis of having a dollar, a dime, or a peppercorn located in the United States." *Id*. Unlike the current case, both *In re Farmer* (2002) and *In re McTague* (1996) were decided pre-BAPCPA (2005) and were not considered under Means Test (considering the

established as satisfying the standard imposed by 11 U.S.C. § 109(a) because the Debtor accordingly has sufficient and cognizable property "located"[8] in the United States. From at least June 2019, through the present, the Debtor established in Connecticut and has continuously maintained an account with the Bank of America. *See* ECF No. 27. As of the filing date of the Petition, $182.30 was held in that account. Regarding the amount of money in the Bank of America account, § 109(a) requires only "some property, no matter how small and no matter when or why acquired in the U.S. at the time the petition is filed" to justify the standard for venue purposes. *See In re B.C.I. Finances Pty Ltd.*, 671 B.R. 669, 672 (Bankr. S.D.N.Y. 2025).

Additionally, under 28 U.S.C. § 109(a), the definition of property in the United States includes "claims or causes of action." *See In re Octaviar Administration Pty Ltd.*, 511 B.R. 361, 369 (Bankr. S.D.N.Y. 2014).[9] The Debtor asserts (without challenge) that his former employment contract with a Connecticut employer[10] and his signed contract and retainer paid to

---

Means Test did not exist at that point in history) grounds and the UST in those cases had unsuccessfully moved to dismiss based on bad faith or substantial abuse grounds instead.

[8] This bank account was originally opened for some years prior to the bankruptcy filing in the United States, purportedly in New Haven, Connecticut, at a Bank of America branch. *See* ECF No. 17 (Debtor's first Objection). The Court notes the UST's argument that the $182.30 in the bank account is merely a debt owed to the Debtor by the bank that can be withdrawn at any Bank of America location and even internationally. *See* ECF No. 18 (UST's Second Supplement to their Motion to Dismiss and Response to the Debtor's first Objection). The Court leaves for another day the question of where a bank account is physically "located," and finds it sufficient enough that the account was opened in the United States, in Connecticut, and with an American financial institution. *See In re Farmer*, 288 B.R. 31 (Bankr. N.D.N.Y. 2002) (holding that a Nassau resident filing bankruptcy in the Northern District of New York has a bank account "located" in Fairmont, New York, giving the debtor proper venue grounds to move forward with her case).

[9] The UST also argues that many of the cases cited by the Debtor's Counsel were pre-BAPCPA corporate Chapter 11 cases. The Bankruptcy Code, specifically § 1408(1), treats individual and non-individual debtors exactly the same for the purpose of determining proper venue in which to bring a case under Title 11. *See In re Segno Communications*, 264 B.R. 501 (Bankr. N.D. Ill. 2001) (citing Lawrence P. King et al., *Collier on Bankruptcy*, ¶ 4.01[1] (Matthew Bender 15th Ed. Revised 2000)).

[10] The Connecticut employer was The Box Office Company LLC, at 63 Copps Hill Road in Ridgefield, CT. The Debtor's employment contract was last renewed and revised in 2023. That contract includes a clause stating "Governing Law; Consent to Personal Jurisdiction. This Agreement shall be governed by and construed according to the laws of the State of Connecticut without reference to conflicts of law's provisions. The Employee hereby expressly consent[s] to the personal jurisdiction of the state and federal courts located in Fairfield County, Connecticut or any lawsuit filed there against the Employee by Company arising from or related to this Agreement." *See* ECF No. 17 (Debtor's first Objection). Additionally, the employment contract with the Debtor's employer provides for the employer to pay the Debtor's costs of moving back to the United States when his employment in Morocco ends. *See* ECF No. 36 (Amended Stipulation of Facts.) It says, "At the conclusion of the Assignment,

a Connecticut attorney[11] sufficiently evidence that the Debtor has "property" tying him to Connecticut for venue purposes. *See* ECF No. 17 at 4—5. This Court agrees with the Debtor and finds, in the aggregate, the Debtor has sufficient and meaningful contacts with Connecticut to meet the venue requirements of 28 U.S.C. § 1408.

B. MEANS TEST

In 2005, Congress enacted BAPCPA, which further created an eligibility "test" for the filing and prosecution of a Chapter 7 case and obtaining of a discharge of an individual's debts. The testing of eligibility for most Chapter 7 individual debtors is measured by the completion and UST review of what is generally called the "Chapter 7 Means Test" which is comprised of Official Forms 122A-1 and 122A-2. Only individual Chapter 7 debtors are subjected to "means testing" and then only when more than one-half of their debts are comprised of "consumer debt."[12] The metrics of means testing are not universal throughout the United States. It is particularized to at least the state level and sometimes further divided to reflect the income and diverse costs of living represented by portions of an individual state.[13] Consistent with the plain meaning of the Chapter 7 Means Test, a person must be living in the United States for a specified time period[14] prior to filing bankruptcy in order to qualify to use local and national standards in

Company will pay for shipment of Employee's personal effects back to the United States and all reasonable travel and resettlement related expenses." *Id*. There appears to be no designated time period in accordance with the promised return to the United States within that employment contract. The current employment contract that the Debtor also has is with The Box Office Company Africa (which is headquartered in Casablanca, Morocco) and is an entity related to The Box Office Company based in Connecticut. *See* ECF No. 27.

[11] In *In re B.C.I. Finances Pty Ltd.,* the court held that an attorney retainer created shortly before a Chapter 15 filing satisfies the requirement of having "property" in the United States for venue purposes. 671 B.R. 669, 672 (Bankr. S.D.N.Y. 2025). Similarly, in *In re Octaviar Administration Pty Ltd*., the court held that "property in the United States" could include an "undrawn retainer." 511 B.R. 361, 372 (Bankr. S.D.N.Y. 2014).

[12] The Debtor has represented that the majority of his debt is comprised of "consumer debt." *See* ECF No. 11 at 16 (Amended Voluntary Petition).

[13] *See* 6 *Collier on Bankruptcy*, ¶ 707.04, (3)[c][i], Expenses Allowed in Means Test; § 707(b)(2)(A)(ii)—(iv): Internal Revenue Expense Standards.

[14] Under U.S.C. § 707(b), (for purposes of properly assessing income and expenses), this time period consists of the six complete calendar months immediately preceding the month a debtor files for bankruptcy.

the formulaic calculation. A debtor cannot reside out of the United States for a term of years and then choose state-specific national and local standards for a unique Means Test calculation.

The metrics of means testing takes into consideration a "debtor's historical income and expenses determined under applicable IRS standards, to establish when a presumption would arise that a Chapter 7 bankruptcy filing constituted an abuse of that chapter." *In re Lukaszewski*, 414 B.R. 15, 17 (Bankr. D. Conn. 2009). If the filing is determined by the court to be abusive, it is dismissed.[15] *See Zelotes v. Martini*, 352 B.R. 17, fn. 6 (D. Conn. 2006). Under the Means Test, "an abuse of the bankruptcy system is presumed when the amount of the debtor's income, after deduction of certain expenses and other specified amounts, exceeds specific thresholds." 11 U.S.C. § 707(b)(2)(A); *Id.*

In the Debtor's Amended Petition for Relief, the Debtor changed his answer regarding where he lives, indicating that he no longer lived in Berlin, CT, and instead that he now lives in Casablanca, Morocco. *See* ECF No. 11. In the supplement to the Motion filed by the UST, the UST summarized the changes that the Debtor made in the Amended Petition and has argued that the Debtor's expenses claimed on Schedule J do not appear to be calculated on the cost of such expenses in Casablanca, but are instead derived from the cost of such expenses in Connecticut. *See* ECF No. 16. The UST "challenges the Debtor's necessary and reasonable expenses as shown on his Schedule J and suggest[s] that the Debtor has either much greater disposable income or lives a high lifestyle and wastes what would otherwise be disposable income to fund a payment plan to creditors." *Id.* at 7. In either event, the Debtor has not demonstrated a qualifying "fit" within the Means Test.

---

[15] In certain cases, the filing is instead converted to a Chapter 11 or 13 filing. 11 U.S.C. § 707(b)(1); *Zelotes v. Martini*, 352 B.R. 17, fn. 6 (D. Conn. 2006).

On the Debtor's Statement of Current Monthly Income, the Debtor answered Question 13 and previously misstated that he lived in the State of Connecticut. *See* ECF No. 2. Considering the Debtor now admits that he has not lived in the State of Connecticut during the requisite six (6) full months[16] prior to the commencement of his Chapter 7 bankruptcy case, the Debtor is not eligible to use the State of Connecticut standards when executing Form 122A-1 (or 2), and a presumption of abuse arises under 11 U.S.C. § 707.

A Chapter 7 bankruptcy case relies on the Means Test as the calculation formula for what an individual debtor may be able to otherwise pay his creditors. The Debtor has not established, before this Court, his eligibility to use the State of Connecticut median income and expense standards for this calculation while he resides for a term of years in Casablanca, Morocco. Additionally, this Court is not at liberty—nor is it empowered to conduct under the statute—discovery to determine what reasonable expenses living in Casablanca, Morocco, may be to conduct a unique or unauthorized Means Test calculation for this specific Debtor. A successful Means Test calculation simply cannot be done here; unfortunately proving fatal to the Debtor's Chapter 7 case for his sought-after bankruptcy relief.

C. <u>BAD FAITH</u>

In the UST's First Supplement to the Motion to Dismiss, the UST added: 11 U.S.C. §§ 707(b)(1), (2), and (3) as Causes for Dismissal for Presumed Abuse, Abuse for Debtor's Bad Faith Filing and Abuse Under the by a Totality of the Circumstances standard. *See* ECF No. 16. At the evidentiary hearing that took place on October 1, 2026, the UST withdrew the Bad Faith assertion, considering that Debtor's Counsel presumably made an inadvertent error when filling

[16] *See* ECF No. 1 at 31, Q2 (Voluntary Petition).

out the Debtor's residence in the original Petition. The Court will accordingly refrain from addressing that prior contention.

D. TOTALITY OF THE CIRCUMSTANCES

Pursuant to Section 707(b)(3)(B)'s "Totality of the Circumstances" provisions in granting a Motion to Dismiss, the Court must engage in a two-part analysis that examines: (1) whether a debtor has the ability to pay a substantial dollar amount or percentage of unsecured debts and, if so, then (2) whether other relevant circumstances exist that are mitigating or aggravating factors. *See In re Colgate*, 370 B.R. 50, 54 (Bankr. E.D.N.Y. 2007).

In the Motion, the UST asserted that the "Totality of the Circumstances" warrant dismissal under 11 U.S.C. § 707(b)(3)(B), but acknowledged that this "Court's consideration of dismissal pursuant to 11 U.S.C. § 707(b)(3)(B) is likely to have to wait upon formal discovery of the Debtor's actual reasonable expenses for his Casablanca, Kingdom of Morocco household which 'strikes a balance between the Debtors' need for a fresh start with the rights of creditors to be paid in a manner commensurate with the purpose and policies of the Bankruptcy Code,'." *See* ECF No. 16 (citing *In re Campbell*, 2012 WL 360031, at *12 (Bankr. E.D.N.Y. 2012)).

Considering this Court is without the ability to determine the actual reasonable household expenses of the Debtor given his residency in Casablanca, Morocco, this Court will not determine whether the Debtor has disposable income sufficient to pay a substantial amount to his unsecured debt. Additionally, the Court will not consider whether there are other relevant circumstances including any mitigating or aggravating factors in this particular case as the Court cannot get past step one of the "Totality of the Circumstances" analysis. The "Totality of the Circumstances" analysis is accordingly unnecessary to address at this time.

## VI. CONCLUSION

**ORDERED:** For the reasons stated herein, this Chapter 7 bankruptcy case is dismissed without prejudice.

**IT IS SO ADJUDGED, ORDERED, AND DECREED** at Hartford, Connecticut this 4th day of November 2026.

James J. Tancredi
United States Bankruptcy Judge
District of Connecticut